UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **EDDIE BROWN, III** | **CIVIL ACTION NO. 22-1656** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE DAVID C. JOSEPH** |
| **VICTOR ZORDAN, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Plaintiff Eddie Brown, III, a prisoner at Ouachita Parish Correctional Center proceeding pro se and in forma pauperis, filed this proceeding on approximately June 14, 2022, under 42 U.S.C. § 1983. He names the following defendants: Chief of Police Victor Zordan, Sheriff Jay Russell, Officer Joshua Lee, unidentified officers with the Monroe City Police Department and Heat Team, District Attorney Steven Tew, and Assistant District Attorney Rickey Smith.[1]

For reasons that follow, the Court should stay Plaintiff's claims against Officer Joshua Lee and other unidentified officers. The Court should dismiss Plaintiff's remaining claims.

## Background

Plaintiff claims that Officer Lee and other unidentified officers with the Monroe City Police Department and Heat Unit falsely arrested him without an arrest warrant on July 7, 2020, charging him with possession with the intent to distribute marijuana, possession of synthetic marijuana, possession of ecstasy, possession of firearms, and illegally supplying firearms. [doc. #s 1, p. 3; 7, pp. 2-3]. Plaintiff characterizes the officers' actions as "defamation, abuse of

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

process, malicious prosecution, false imprisonment, and intentional infliction of emotional distress." [doc. # 1, p. 3].

Plaintiff also claims that officers searched his property without a search warrant, probable cause, or any exception to the warrant requirement. [doc. # 7, p. 2].

As above, Plaintiff states that he suffered emotional distress because of the officers' actions. Two weeks later on July 21, 2020, he experienced "signs of a stroke or heart attack due to the" emotional distress. *Id.* at 3. His spouse called an ambulance, but an ambulance never arrived, and he was not treated. *Id.* at 3-4.

Plaintiff claims that after his spouse called an ambulance, Officer Lee and other unidentified officers arrived, unlawfully searched his property, and falsely arrested him. *Id.* at 3. Officers seized two vehicles and over $6,000.00 following the search and arrest. *Id.* at 4.

Suggesting that his charges remain pending, Plaintiff states that a judge or jury has not convicted him and that he has not pled guilty. *Id.*

Plaintiff states that, on July 7, 2021, at his preliminary examination, a state court judge in the Fourth Judicial District Court ordered that he be released from his bail obligation, finding no probable cause. [doc. # 1, p. 3].

Plaintiff seeks compensation, a declaration that "the acts and omissions described herein violated [his] rights[,]" and an injunction ordering defendants to return assets he forfeited, including three vehicles and $74,686.00. [doc. #s 1, p. 4; 7, p. 5].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is

subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2]  *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*).  Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.  Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless.  *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Plausibility does not equate to possibility or probability; it lies somewhere in between.  *Id.*  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. Prosecutorial Immunity

Citing the state trial judge's finding of no probable cause, Plaintiff claimed in his initial pleading that he was being maliciously prosecuted. [doc. # 1, p. 3]. In an amended pleading, Plaintiff appears to fault District Attorney Steven Tew and Assistant District Attorney Rickey Smith. [doc. # 7, p. 2]. He states that Assistant District Attorney Smith is "presiding for the state on the Plaintiff's prosecution." *Id.*

"Criminal prosecutors . . . enjoy absolute immunity from claims for damages asserted under [42 U.S.C.] § 1983 for actions taken in the presentation of the state's case." *Watson v. Walton*, 68 F.3d 465 (5th Cir. 1995). "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997) (holding that a prosecutor's conduct in connection with preparing and filing charging documents was protected by absolute immunity).

"Absolute immunity is not a rigid, formal doctrine, but attaches to the functions a prosecutor performs." *Moon v. City of El Paso*, 906 F.3d 352, 359 (5th Cir. 2018). The Fifth Circuit has consistently held that the decision of when and whether to file criminal charges clearly falls within the scope of a district attorney's prosecutorial duties protected by absolute prosecutorial immunity. *See Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009); *Workman v. Calogero*, 174 Fed. App'x. 824, 826 (5th Cir. 2006). Absolute immunity shields prosecutors even when they act maliciously, wantonly, or negligently. *Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016).

Here, District Attorney Steven Tew and Assistant District Attorney Rickey Smith are immune from Plaintiff's claims—only with respect to Plaintiff's request for monetary relief— that they are maliciously prosecuting him without probable cause. The decision of when and

5

whether to file criminal charges clearly falls within the scope of a district attorney's prosecutorial duties protected by absolute prosecutorial immunity. *See Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *see also Brown v. Dove*, 519 F. App'x 237, 238 (5th Cir. 2013) ("[C]onclusory allegations of . . . malicious prosecution do not pierce [prosecutorial] immunity.").

Under Plaintiff's threadbare allegations, Tew and Smith acted only in the course of their roles as governmental advocates. Accordingly, the Court should dismiss these claims as frivolous and because Plaintiff seeks monetary relief from defendants immune from such relief.[3]

### 3. Conclusory Claims

First, and as above, Plaintiff names Assistant District Attorney Rickey Smith as a defendant because Smith is "presiding for the state on the Plaintiff's prosecution." [doc. # 7, p. 2]. Plaintiff's claim, however, is entirely conclusory. He does not explain why he considers his prosecution malicious or how, specifically, Smith violated his constitutional rights.[4] Rather, he essentially names Smith as a defendant because Smith is prosecuting him. The Court should dismiss this all-too-conclusory claim. *See Bradley v. Sheriff's Dep't St. Landry Par.*, 958 F.3d 387, 395 (5th Cir. 2020) (finding, where a plaintiff alleged that he had "the right to be free from malicious prosecution[,]" that he only presented "conclusory assertions devoid of any specifics.").

---

[3] "Neither absolute nor qualified personal immunity extends to suits for injunctive or declaratory relief under § 1983." *Chrissy F. by Medley v. Mississippi Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991).

[4] The undersigned instructed Plaintiff to "provide a separate description of what, exactly, each defendant did to violate his rights." [doc. # 6].

Next, Plaintiff alleges that he was not treated after he experienced "signs of a stroke or heart attack due to" emotional distress. [doc. # 7, p. 3]. Plaintiff, however, does not identify a responsible defendant. Thus, the Court should dismiss this claim.

Finally, Plaintiff baldly alleges that his right to due process was violated and that he is "being denied 'equal protection of the laws' of the United States Constitution." Plaintiff merely presents labels, conclusions, and formulaic recitations of causes of actions which do not satisfy Federal Rule of Civil Procedure 8. In addition, he does not identify a responsible defendant. The Court should dismiss these claims.

**4. Supervisory Liability**

Plaintiff names Chief of Police Victor Zordan as a defendant because Zordan "is legally responsible for the overall operation of the Monroe City Police Department and the Monroe Heat Department." [doc. # 7, p. 1]. He names Sheriff Jay Russell as defendant because he "is the legal custodian of Ouachita Parish and the institution under its jurisdiction including Ouachita Parish Correctional Center." *Id.* at 2. He names District Attorney Steven Tew as defendant because Tew is the "District Attorney for the 4th Judicial District of Ouachita Parish, State of Louisiana." *Id.*

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'" *Brown v.*

*Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Here, Plaintiff does not plausibly allege that Zordan, Russell, or Tew affirmatively participated in any act that caused a constitutional deprivation or that there was a sufficient causal connection between their conduct and any alleged constitutional violation.[5] Instead, Plaintiff pleads only vicarious liability, essentially naming these individuals as defendants solely because of the positions or titles they hold. *See Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir. 1987) ("[M]isconduct of Sheriff Belt's employees cannot be imputed to the sheriff individually . . . .").

Plaintiff does not allege that these defendants implemented an unconstitutional policy, practice, custom, or procedure that deprived him of any constitutional right.

Accordingly, the Court should dismiss Plaintiff's remaining claims against Zordan, Russell, and Tew.[6]

---

[5] *See Dedrick v. Richards*, 47 F.3d 425 (5th Cir. 1995) ("An official who is sued in her individual capacity cannot be liable under § 1983 on the theory of *respondeat superior;* to be liable she must have been personally involved in the plaintiff's injury."); *Salcido v. Univ. of S. Mississippi*, 557 F. App'x 289, 292 (5th Cir. 2014) ("To make out a § 1983 claim against the Defendants in their individual capacities, Salcido must show that they were either personally involved in the constitutional violations alleged or that their wrongful actions were causally connected to the constitutional deprivation.").

[6] *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 421 (5th Cir. 2017) (opining, where a plaintiff "named the supervisory officials as defendants and alleged generally that they failed in their responsibilities as department heads[,]" that the plaintiff "failed to allege any particular defendant's personal involvement in conduct that caused constitutional deprivation" and failed to allege "that any of the defendants implemented an unconstitutional policy causally related to his injury."); *Taylor v. LeBlanc*, 851 F. App'x 502 (5th Cir. 2021).

**5.** *Heck v. Humphrey* **and** *Wallace v. Kato*

Plaintiff claims that Officer Lee and other unidentified officers with the Monroe City Police Department and Heat Unit falsely arrested him without an arrest warrant on July 7, 2020, charging him with possession with the intent to distribute marijuana, possession of synthetic marijuana, possession of ecstasy, possession of firearms, and illegally supplying firearms. [doc. #s 1, p. 3; 7, pp. 2-3]. Plaintiff characterizes the officers' actions as "defamation, abuse of process, malicious prosecution, false imprisonment, and intentional infliction of emotional distress." [doc. # 1, p. 3].

Plaintiff claims that officers searched his property without a search warrant, probable cause, or any exception to the warrant requirement. [doc. # 7, p. 2].

Plaintiff claims that on July 21, 2020, Officer Lee and other unidentified officers unlawfully searched his property and falsely arrested him. *Id.* at 3. Officers seized two vehicles and over $6,000.00 following the alleged unlawful search and arrest. *Id.* at 4.

Suggesting that his charges remain pending, Plaintiff states that a judge or jury has not convicted him and that he has not pled guilty. *Id.* The undersigned confirmed that Plaintiff has pending charges from the two arrest dates mentioned above.[7]

To be sure, Plaintiff does maintain that a state trial judge "concluded in a preliminary exam" that there was "no basis of probable cause in the matter . . . ." [doc. # 1, p. 3]. However, under LA. CODE CRIM. PROC. art. 386, "Discharge of a defendant after a preliminary examination does not preclude the subsequent filing of an indictment, information, or affidavit against him for the same offense." As explained in Official Revision Comment (c) to LA. CODE CRIM. PROC. art.

---

[7] TELEPHONE CALL TO THE OUACHITA PARISH CLERK OF COURT (July 26, 2022).

296: "The court may order the release of the defendant, if it determines at the preliminary examination, that the state does not have a solid prima facie case against him. Such a release, however, does not have the effect of a judicial dismissal of the pending information, since it merely releases the defendant from the inconvenience of custody or bail, and the district attorney still may decide whether the defendant is to be brought to trial or the charge dismissed, or whether a grand jury indictment will be sought." Here, as permitted under state law described above, the State filed bills of information against Plaintiff with respect to Plaintiff's two arrests on July 7 and 21, 2020;[8] thus, his charges remain pending.

If Plaintiff is convicted of his pending charges, he may not be entitled to seek relief for his claims until any convictions are reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. *See Heck v. Humphrey*, 512 U.S. 477 (1994) (holding that a successful civil rights action that would necessarily imply the invalidity of the plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus).

While the rule in *Heck* does not extend to pending criminal matters, successful claims, under Plaintiff's allegations, could necessarily imply the invalidity of any future convictions.[9] *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (finding that the *Heck* rule applies only when there has been a conviction or sentence that has not been invalidated, not to pending criminal charges).

---

[8] TELEPHONE CALL TO THE OUACHITA PARISH CLERK OF COURT (July 26, 2022).

[9] A successful claim will not necessarily imply the invalidity of a conviction "if the factual basis for the conviction is temporally and conceptually distinct from" the claim. *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008).

Prevailing on the false arrest claims—and establishing that the arresting officers lacked probable cause to arrest Plaintiff—could necessarily imply the invalidity of a future conviction because the claims are essentially collateral attacks on a criminal judgment's validity. *See Thomas v. Pohlmann*, 681 F. App'x 401, 406 (5th Cir. 2017) (*citing Cormier v. Lafayette City-Par. Consol. Gov't*, 493 Fed. App'x. 578, 583 (5th Cir. 2012)); *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) ("[The plaintiff's] proof to establish his false arrest claim, i.e., that there was no probable cause to arrest [for the crime he was convicted of], would demonstrate the invalidity of [the conviction].").[10]

Prevailing on the unlawful search claims could necessarily imply the invalidity of a future conviction because the claims are predicated on the absence of probable cause for the searches and therefore would constitute collateral attacks on any future convictions founded on evidence derived from the searches.[11] *See Hall v. Lorenz*, 48 F. App'x 481 (5th Cir. 2002)

---

[10] *See also Queen v. Purser*, 109 Fed. App'x. 659 (5th Cir. 2004) (a former inmate's false-arrest claim necessarily challenged whether the evidence, which an officer seized following an allegedly illegal stop, and which led to his subsequent conviction, supplied probable cause for his arrest; thus, the claim was not cognizable absent a showing that the conviction had been invalidated); *Chande v. Moore*, 606 F. App'x 238, 239 (5th Cir. 2015) ("Because a showing that there was no probable cause for the challenged entry, search, seizure, and arrest would call into question the validity of [plaintiff's] resulting conviction for unlawful possession of a controlled substance with intent to deliver in a drug-free zone," the plaintiff's claims were barred by *Heck*); *Goldston v. City of Monroe ex rel. Monroe Police Dep't*, 621 F. App'x 274 (5th Cir. 2015).

[11] While "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial . . . [b]ecause of doctrines like independent source[,] inevitable discovery, and [] harmless error," Plaintiff does not allege this. *See Heck*, 512 U.S. at n.7 (alterations to original and cited sources omitted); *see also Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir. 1996) ("If proved, however, [the plaintiff's] false arrest claim necessarily would call into question his conviction as a felon in possession of a firearm. Specifically, if the arresting officers lacked probable cause to arrest Hudson for burglary and the arrest is invalid, the firearm discovered in Hudson's possession as a result of the arrest would be subject to suppression under the Fourth Amendment as the 'fruit' of an illegal arrest. Moreover, it is improbable that doctrines such as independent source, inevitable discovery and harmless error would permit the introduction of the firearm as evidence in this case . . . .").

("Hall's claims regarding his allegedly illegal arrest and illegal search and seizure, if successful, would undermine the validity of his felony drug conviction."); *Kato*, 549 U.S. at n.5 ("[A] Fourth Amendment claim can necessarily imply the invalidity of a conviction . . . .").

Plaintiff tentatively raises multifarious state law claims, characterizing the officers' actions as defamation, abuse of process, false imprisonment, and intentional infliction of emotional distress. [doc. # 1, p. 3]. Prevailing on these ostensible state law claims could necessarily imply the invalidity of a future conviction because the claims all emanate from his arrests. *See Price v. City of Bossier*, 841 F. App'x 650, 654 (5th Cir. 2021) ("Price's amended complaint re-asserts his state law claims against the officers but fails to add any additional factual allegations. These torts—assault, abuse of process, intentional infliction of emotional distress, false arrest, false imprisonment, negligence, gross negligence, and other intentional torts—all stem from Price's arrest. Louisiana applies the *Heck* rationale to state law tort claims. . . . [T]hese state law claims imply the invalidity of the underlying conviction.") (footnote and cited sources omitted).

Finally, Plaintiff seeks the return of forfeited assets. The undersigned construes this only as a request for ultimate relief (rather than a claim). But even if Plaintiff did claim that officials unlawfully seized, impounded, or caused him to forfeit his assets, the claim could necessarily imply the invalidity of any future conviction because it is premised on Plaintiff's unlawful arrest claims. *See Almaguer v. Cty. of Bexar*, 774 F. App'x 900 (5th Cir. 2019) (finding, where the plaintiff alleged that defendants stole "his personal property during an illegal search of his home[,]" that success "would necessarily imply the invalidity of his conviction."); *Mann v. Denton Cty. Texas*, 364 F. App'x 881, 882 (5th Cir. 2010) (finding, where the plaintiff claimed

that officials deprived him of property seized when he was arrested, that *Heck* barred the claim).

Federal courts should stay civil rights claims that attack the legality of a detainee's arrest, prosecution, and detention until the allegedly improper state prosecution concludes. *See Kato*, 549 U.S. at 393-94. Critically, "If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim *related to* rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court . . . to stay the civil action until the criminal case . . . is ended." *Id.* (emphasis added); *see Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) (opining that courts *should* stay proceedings "until the pending criminal case has run its course . . . .").

Here, Plaintiff's claims are *related to* rulings that will likely be made concerning his pending charges. Accordingly, the Court should stay these claims pending the outcome of Plaintiff's ongoing criminal prosecution.[12]

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Eddie Brown, III's, claims against Officer Joshua Lee and other unidentified officers be **STAYED** under the following conditions:

> a. If Plaintiff intends to proceed with these claims, he must, within <u>thirty (30) days</u> of the date the criminal proceedings against him conclude, file a motion to lift the stay;

---

[12] *See Mackey*, 47 F.3d at 746 ("At this point it is simply premature to determine whether or not Mackey's damage claims are barred under *Heck*. . . . The court [should] stay proceedings in the section 1983 case until the pending criminal case has run its course, as until that time it may be difficult to determine the relation, if any, between the two."); *Davis v. Zain*, 79 F.3d 18, 19 (5th Cir. 1996) ("[I]f some presently unforeseen or unarticulated conflict arises between the criminal retrial and the pending § 1983 case, the district court may consider the propriety of a stay . . . .").

b. If the stay is lifted and the Court finds that Plaintiff's claims would impugn the validity of his conviction, the action will be dismissed under *Heck*; if no such finding is made, the action will proceed absent some other bar to suit;

c. Plaintiff should not file any more documents concerning these particular claims (other than an objection to this Report and Recommendation if he chooses) in this action until the state court proceedings conclude; and

d. Defendants shall not be required to answer these claims during the stay, and Plaintiff may not seek a default judgment or conduct any discovery during the stay.

**IT IS FURTHER RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED** as frivolous, for failing to state claims on which relief may be granted, and for seeking monetary relief against defendants immune from such relief.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See***

***Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 3rd day of August, 2022.

                                                  Kayla Dye McClusky
                                                  United States Magistrate Judge